IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GAYNELL COLBURN,** | * | |
| Plaintiff, | * | |
| | | Civil Action No. RDB-22-895 |
| v. | * | |
| **THE BRAUN CORPORATION** *et al*, | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Gaynell Colburn ("Plaintiff" or "Colburn") is a disabled individual who requires specialized equipment to access her motor vehicle. She brings this products liability action against Defendant Mobility Works ("Mobility Works") and Defendant Braun Corporation ("Braun" or "BraunAbility"). (Second Amended Complaint, ECF No. 27.) Colburn asserts violations of the Maryland Consumer Protection Act against Mobility Works (Count 1), various theories of breach of warranty against both Defendants (Count Two), negligence against both Defendants (Count Three), and a claim under the Magnuson-Moss Warranty Act against both Defendants (Count Four). *Id.* Defendant Mobility Works has filed an Answer, and Defendant Braun filed a Motion to Dismiss (ECF No. 11.)[1] The Court has considered Braun's Motion, Plaintiff's Opposition (ECF No. 28), and Braun's Reply (ECF

---

[1] Defendant Braun filed its Motion prior to Plaintiff's amendments to her Complaint. Defendant Braun maintains that Plaintiff's Second Amended Complaint fails to fix the deficiencies as highlighted in Braun's Motion to Dismiss, and reasserts each argument made therein. As Plaintiff notes, Braun's Motion argues for dismissal of Plaintiff's Maryland Consumer Protection Act and punitive damages claims, but Plaintiff's Second Amended Complaint removes those claims against Defendant Braun. Accordingly, those arguments are not addressed in this Memorandum Opinion, and Defendant's Motion to Dismiss (ECF No. 11) those claims is DENIED as MOOT.

No. 35). No hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Defendant Braun's Motion to Dismiss (ECF No. 11) is DENIED as to all matters, with the exception of one of several theories of breach of warranty as to which the motion is GRANTED. More specifically, Plaintiff's claim for breach of warranty under a theory of implied warranty of fitness for a particular purpose shall be DISMISSED. Plaintiff's remaining theories for breach of warranty as set forth in Count Two, her claim of negligence as set forth in Count Three, and her claim under the Magnuson-Moss Warranty Act as set forth in Count Four shall proceed to discovery.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff holds a Maryland license that entitles her to drive a vehicle "outfitted with hand controls and a handicapped accessible ramp." (ECF No. 27 at 4.) On November 15, 2018, Colburn visited a Mobility Works located in Maryland to learn about handicapped-accessible vehicles to replace her preexisting van. *Id.* at 5. Plaintiff was originally interested in a handicapped-accessible Suburban previously advertised at a Mobility Work workshop, but was told by a representative, Ms. Wallace, that the Suburban was not available with Colburn's requested package. *Id.* Instead, Ms. Wallace interested Colburn in a 2017 Chrysler Pacifica Limited, which was advertised as previously ordered by, but never delivered to, another customer. *Id.* The vehicle was parked in the outside lot outside

of the Mobility Works store and was "fully outfitted with a BraunAbility Power Ramp and Hand Controls" which were manufactured, designed, and installed by Defendant Braun. *Id.*

Plaintiff notified Ms. Wallace that she wanted to purchase the vehicle, and Ms. Wallace provided a written proposal for the purchase on November 30, 2018. (ECF No. 27 at 6.) The proposal included a line-item price breakdown, namely the $20,130.00 "handicap conversion equipment price", and the $1,308.15 cost of "adaptive equipment" for a total purchase price of $72,666.35. *Id.* The proposal included an "Adaptive Equipment Summary" page explaining the BraunAbility conversion package. *Id.* Colburn purchased the vehicle on December 12, 2018, at which point Ms. Wallace orally stated that "the vehicle came with a three-year manufacturer's warranty, effective as of the sale date." (ECF No. 27 at 8.) Colburn received a welcome letter from BraunAbility on January 14, 2019, which congratulated her on the purchase of a "BraunAbility vehicle." *Id.*

Shortly after purchase, Plaintiff's vehicle frequently malfunctioned and caused her injuries. Notably, on at least three occasions, the door either jammed or did not shut when Colburn attempted to enter or exit her vehicle, leaving her stranded in parking lots for hours. *Id.* at 9-10. Colburn notified Mobility Works of these issues as they arose. *Id.* at 10. Mobility Works eventually inspected her vehicle on April 15, 2019, just four months after the purchase date, and it was reported that the Braun System Fuse was blown. *Id.* Mobility Works' repair notes "stated that Braun was apparently aware that the ramp had issues in wet or cold weather." *Id.* The mechanic replaced the fuse and reconfigured the override switch, assuring Plaintiff that the vehicle was operable and the ramp was repaired. *Id.*

On June 9, 2019, the ramp malfunctioned when Plaintiff was exiting the vehicle. (ECF No. 27 at 11.) Because of the configuration of the side door conversion system, the only way to exit the vehicle was to roll down the ramp backwards. *Id.* While exiting, the ramp prematurely retracted and pitched Plaintiff off the ramp and out of her wheelchair onto the ground. *Id.* Colburn was found laying in the street and an individual assisted her into a church building. An hour later, Plaintiff's injuries required hospital assistance where she was first seen at Union Memorial Hospital and then transferred to Johns Hopkins Hospital to "receive treatment for a fractured thumb and wrist, injured shoulder, a concussion, and a retinal detachment." *Id.*

After this accident, Mobility Works directed Colburn to press the reset button to fix the ramp issues. (ECF No. 27 at 11.) Colburn had a mechanic do this for her, and initially it proved to restore the ramp's function. *Id.* However, there still existed a "defect in the control modules for the ramp and kneeling system which was part of the adaptive equipment." *Id.* at 12. As a result, on July 25, 2019, Colburn was again pitched off her ramp on to the ground. *Id.* This time, Plaintiff was immediately transported to the Johns Hopkins Hospital by ambulance and was admitted "for a traumatic brain injury, a reinjury to her shoulder and wrist, and damage to her occipital nerve." *Id.* Colburn remained in the hospital until August 3, 2019, and received outpatient treatment through November 9, 2020. *Id.* Plaintiff asserts that the vehicle also exhibited defects with the undermount and removal of shocks. *Id.*

Defendant Braun's Motion to Dismiss (ECF No. 11) argues that Plaintiff has failed to set forth facts sufficient for a plausible cause of action particularly because she has failed to elucidate specific actions by Braun. Plaintiff's Opposition (ECF No. 28) highlights Braun's

4

involvement and accountability for her injuries, to which Braun replies (ECF No. 35) that the Second Amended Complaint still alleges vague and conclusory language. At this pleading stage, Plaintiff's Second Amended Complaint provides sufficient facts to survive Defendant Braun's Motion to Dismiss.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

I. **Breach of Warranty (Count Two)**

Colburn's Second Amended Complaint alleges violations of express warranty, implied warranty of merchantability, and implied warranty of fitness for particular purpose under Maryland law. Each are addressed in turn.

    a. *Express Warranty*

"In order to prevail on a claim for breach of express warranty, the plaintiff must prove that the seller created an express warranty, the product did not conform to the warranty, and the lack of conformity caused the injury suffered." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 107 (D. Md. 2020). An express warranty is created by:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Md. Code Ann., Com. Law § 2-313. Plaintiff alleges that Braun expressly warranted to her that the vehicle could be used as a handicapped van pursuant to written sales agreements. (ECF No. 28-1 at 4.) Braun argues that it did not provide an express warranty and that Plaintiff has failed to plead any agency relationship between Braun and Mobility Works for Mobility Works' representations to be imputed on Braun. (ECF No. 35 at 5-6.)

The Court's determination needs not rely on an agency relationship at this stage of the case; instead, Plaintiff's Second Amended Complaint alleges that the sale proposal included an "Adaptive Equipment Summary" page explaining the BraunAbility conversion package. (ECF No. 27 at 6.) Viewed in the light most favorable to Plaintiff, this summary provided a "description of the goods which is made part of the basis of the bargain" and created "an express warranty that the goods shall conform to the description." Md. Code Ann., Com. Law § 2-313(b). Despite the Defendant's assertion, at this stage, there is no need for hard copy of that summary to be provided. Simply, allegation of that summary, paired with the $20,130.00 price of Braun handicap conversion, warranted that the vehicle was fully functioning as handicapped-accessible. Unfortunately, instances of the ramp malfunctioning indicate that the vehicle did not conform to handicapped accessibility.[2] Plaintiff pointed to two specific instances where the ramp malfunctioned and pitched her completely out of her wheelchair on to the ground, resulting in serious injury and hospitalizations. At this stage, discovery on this issue is warranted at the least. Therefore, Defendant's Motion (ECF No. 11) is DENIED, and Plaintiff may pursue this theory of breach of warranty.

  b. *Implied Warranty of Merchantability*

"A warranty of merchantability is implied in any contract for the sale of goods 'if the seller is a merchant with respect to goods of that kind.'" *Morris*, 491 F. Supp. 3d at 106 (quoting Md. Code Ann., Com. Law § 2-314(1)). Braun does not deny that it sells such goods, but instead argues that Plaintiff has failed to point to any defect with specificity. (ECF No. 11-1

---

[2] Though not relevant to the "bargain" aspect of express warranty, it is worth noting that Braun mailed Plaintiff a letter after purchase of her vehicle congratulating her on the purchase of a "BraunAbility vehicle." (ECF No. 27 at 8.) Again, though not outcome determinative, this allegation tends to support an agency relationship between Mobility Works and Braun.

at 11.) In particular, Braun asserts that Colburn has not alleged that Braun itself manufactured the parts of the vehicle that malfunctioned. *Id.* Plaintiff's Second Amended Complaint alleges that Braun is an "American manufacturer of wheelchair accessible vans and wheelchair lifts." (ECF No. 27 at 3.)  As Plaintiff aptly notes, she "has made numerous references in the Second Amended Complaint to how the ramp malfunctions caused her serious and compensable injuries." (ECF No. 28-1 at 6.) The Second Amended Complaint also repeatedly alleges that Braun designed, manufactured, and installed the wheelchair adaptive equipment. Thus, Defendant's argument here fails and its Motion to Dismiss (ECF No. 11) as to this theory for breach of warranty is DENIED.

      *c.   Implied Warranty of Fitness for Particular Purpose*

"A warranty of fitness for a particular purpose is implied in the sale of goods when 'the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.'" *Morris*, 491 F. Supp. 3d at 106 (quoting Md. Code Ann., Com. Law § 2-315(1)). Particular purpose means use by the buyer that is "peculiar" or otherwise used for a purpose that is not ordinary or custom for which the good is "envisaged." Md. Code Ann., Com. Law § 2-315 cmt. n.2.

Plaintiff has failed to plead that she intended to use the handicapped-accessible vehicle for a "particular purpose" outside of what the vehicle was intended to serve. Plaintiff purchased and used the vehicle because of its handicap accessibility, the exact purpose for which the vehicle was designed and sold. Accordingly, Defendant Braun's Motion to Dismiss

(ECF No. 11) this claim is GRANTED, and Plaintiff's claim of implied warranty of fitness for particular purpose is DISMISSED.

## II. Negligence (Count Three)

Plaintiff alleges negligence under a design defect theory, which requires duty, breach, causation, and injury. *Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 780 (D. Md. 2012) ("the basic elements of negligence apply in negligence-based products liability cases"). A manufacturer has a duty to "design and manufacture [a] product so that it is safe for all reasonably foreseeable uses." *Id.* Plaintiff has sufficiently alleged facts relating to all four elements. Plaintiff has set forth facts indicating that Braun had a duty to design and manufacture safe handicapped conversion equipment, that its equipment malfunctioned on numerous occasions, and that Colburn sustained serious injuries as a result of those malfunctions. Braun argues that Plaintiff has failed to specifically identify the defects which constituted a breach, particularly emphasizing that her negligence claim contains a "generic use of the term 'control module'". (ECF No. 35 at 7.) This argument is unfounded and misses the mark. Plaintiff has detailed specific instances of ramp malfunctions which alone are sufficient for the dismissal stage. Accordingly, Defendant's Motion to Dismiss (ECF No. 11) Plaintiff's negligence claim is DENIED.

## III. Magnuson-Moss Warranty Act (Count Four)

The Magnuson-Moss Warranty Act ("MMWA") supplements state law and supplies a federal cause of action for warranty violations. 15 U.S.C. § 2310; *Wolf v. Ford Motor Co.*, 829 F.3d 1277, 1278 (4th Cir. 1987). The MMWA "generally calls for the application of state written and implied warranty law, not the creation of additional federal law." *Doll v. Ford Motor*

*Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011) (internal quotations and citation omitted). Thus, this Court typically adopts the same analysis for a plaintiff's state law breach of warranty claims. *See id.* Accordingly, as Colburn has sufficiently plead facts to survive dismissal of her express and implied breach of warranty claims, her MMWA claim suffices. Therefore, Defendant's Motion to Dismiss (ECF No. 11) Plaintiff's MMWA claim is DENIED.

## CONCLUSION

For the reasons stated above, Defendant Braun's Motion to Dismiss (ECF No. 11) is DENIED as to all matters, with the exception Plaintiff's claim for breach of implied warranty of fitness for particular purpose as to which the Motion is GRANTED.

A separate Order follows.

Dated: January 9, 2023  _____/s/_____
Richard D. Bennett
United States District Judge